No. 25,223.

MARY A. FORD, as Administratrix, etc., *Appellant,* v. M. E. PECK, *Appellee.*

SYLLABUS BY THE COURT.

1. ADMINISTRATION OF ESTATE—*Residence of Deceased—Jurisdiction of Probate Court—Findings of Probate Court.* The proceedings in a case involving jurisdiction of a probate court to appoint an administrator, considered, and *held,* a finding that the deceased was a resident of a certain county at the time of his death was a finding of ultimate fact, was consistent with other findings touching the issue of residence, and was sustained by the evidence.

2. SAME—*Rules of Law Relating to Change of Domicile.* Rules of law relating to change of domicile stated and applied.

Appeal from Saline district court; DALLAS GROVER, judge. Opinion filed May 10, 1924. Affirmed.

*David Ritchie,* and *Omer D. Smith,* both of Salina, for the appellant.
*Z. C. Milliken,* of Salina, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover on a promissory note. Plaintiff was defeated, and appeals.

The note was given by defendant to C. W. Ford, in his lifetime. Plaintiff claimed as administratrix of Ford's estate, by appointment of a probate court in Oklahoma. The defense was that, when Ford died, he was a resident of Saline county, Kansas, he left property subject to administration there, and defendant had been duly appointed administrator of his estate by the probate court of that county. The cause was tried by the court, and the following findings of fact bearing on the issue regarding residence were stated:

"1. C. W. Ford, the administration of whose estate is the subject of the controversy in this action, died intestate in the city of Salina, Saline county, Kansas, on the 19th day of June, 1922. He was about sixty years of age. He

Ford, *Adm'x*, v. Peck.

had been married twice, and left as his heirs at law his widow, the plaintiff, Mary A. Ford, and a son by his first wife.

"2. Said C. W. Ford and his said wife, Mary A. Ford, plaintiff herein, had lived in the state of Kansas for about thirty-seven years, making their home at various places in said state. For some time prior to February, 1922, they had lived in the city of Salina, Saline county, Kansas.

"3. Plaintiff's health having for some time been in a failing condition, and a change of climate having been recommended, it was decided that she and her husband, said C. W. Ford, should move to Oklahoma and make their home there.

"4. In the month of February, 1922, plaintiff left her home in Salina, and went to Oklahoma City, where a son of hers by a former marriage was then living. It was the intention at said time, of C. W. Ford and said Mary A. Ford, to make their permanent home in Oklahoma.

"5. Said C. W. Ford remained in Salina for some time after the departure of his said wife, Mary A. Ford, for the purpose of disposing of their property located in Saline county, and after said business had been attended to, said Ford left Kansas, and joined his wife in Oklahoma City. There he purchased a residence property, and was contemplating purchasing other property in said Oklahoma City; but about June 1, 1922, he returned to Kansas to work in harvest, and to look after some business matters which had not been closed up before his departure for Oklahoma, as hereinbefore stated. On his return to Kansas, he lived in Salina at the home of one Mrs. Jennings.

"6. Shortly after his said return from Oklahoma he talked with real-estate agents about trading Salina property for Oklahoma City property, as well as Oklahoma City property for Salina property. Later, he began negotiations with Salina real-estate agents for the purchase of a residence property in Salina, with a view to making the same a home for himself and wife. He had decided to make his home permanently in Salina, Kansas, and intended never to return to Oklahoma to live. Arrangements had been made by himself and wife that the latter should sell their Oklahoma property, and come to Salina, Kansas, to live. The aforesaid Mrs. Jennings was to meet said wife at Wichita and to bring her to her (Mrs. Jennings' home) home, in Salina.

"11. The said C. W. Ford was, at the time of his death, a resident of Salina, Saline county, Kansas.

"12. At the time of the death of C. W. Ford, the residence property of said Ford and wife, in Oklahoma City, Oklahoma, had not been sold. Their household goods were still at the said residence property, and Mrs. Ford had not yet come to Salina to make Saline county her permanent home.

"13. Since the death of C. W. Ford, the plaintiff, Mary A. Ford, has continued to reside in Oklahoma City, Oklahoma.

"14. Said C. W. Ford, at the time of his death, had not purchased a residence property in Salina, Saline county, Kansas."

Plaintiff contends finding No. 11 is not a finding of fact. She contends further that, if the finding be a finding of fact, it is inconsistent with the other findings, and is contrary to the evidence.

The statute relating to decedents' estates provides that, when an inhabitant of this state dies, administration of his estate shall be granted by the probate court of the county in which he was an inhabitant or resident at the time of his death. (R. S. 22-301.) For purposes of this statute, inhabitant and resident are synonyms (*Ewing v. Mallison,* 65 Kan. 484, 70 Pac. 369), and finding No. 11 is a finding of the ultimate fact on which jurisdiction to appoint an administrator depended.

The term "residence," as used in the statutes of Kansas, has been defined by the legislature:

"The term 'residence' shall be construed to mean the place adopted by a person as his place of habitation, and to which, whenever he is absent, he has the intention of returning." (R. S. 77-201, subdiv. 23.)

While for many legal purposes there is a clear distinction between residence and domicile (*Pendleton v. Pendleton,* 109 Kan. 600, 201 Pac. 62), when jurisdiction of a court is under consideration, residence, as defined by the statute, is substantially the equivalent of domicile. (*Modern Woodmen v. Hester,* 66 Kan. 129, 71 Pac. 279.)

It is elementary law that change of domicile, as from Oklahoma to Salina, Kan., involves two things, designated by classical authors as the factum and the animus. There must be transfer of bodily presence to another place, represented in the statutory definition by adoption of a place of habitation; and there must be intention to abide at the new location, either permanently or indefinitely, represented in the statutory definition by intention of returning when absent. Sometimes the animus is treated as involving two separate intentions, one to abandon the old location, and one to abide in the new. If the last intention be formed, it necessarily includes the other. The factum and the animus must finally coexist. Neither alone is enough; but the animus may follow the factum in point of time and, should that occur, the change of domicile is complete. It is sufficient if the factum and the animus do coexist, length of time being unimportant, and the character of the place of abode at the new location is of no importance, except as bearing on the question of intent. (*Hart v. Horn,* 4 Kan. 232, 239.)

In the present case there is no dispute about the factum. Ford left Oklahoma, came to Salina, and remained there until he died. The 6th finding is conclusive in reference to the animus. After going back to Salina, Ford decided to make that place his permanent

home, and never to return to Oklahoma to live. Nothing else was required to establish his residence at Salina.

Ford's domicile determined the domicile of plaintiff. Before his death, none of the circumstances authorizing her to establish a separate domicile existed, and when he fixed Salina as the permanent place of his abode, it became her domicile by operation of law. (*Amsbaugh v. Exchange Bank,* 33 Kan. 100, 5 Pac. 384; *Modern Woodmen v. Hester,* 66 Kan. 129, 133, 71 Pac. 279.) There is no question of .fraud in this case and, whatever evidential value the fact may have that a man usually resides where his family resides (*Keith v. Stetter,* 25 Kan. 100), Ford and his wife had made arrangements that she should dispose of their Oklahoma property, and join him to live in Salina. Even traveling arrangements had been made looking to her removal to Salina.

As indicated, it is not conclusive that Ford came back to Salina for what was regarded at the time as a temporary sojourn, leaving his household goods in Oklahoma. It was not necessary to change of domicile that he first sell his Oklahoma residence and buy a residence in Salina, and the result is, finding No. 11 is not only well supported by finding No. 6, but is not inconsistent with the other findings.

Intention is of course a matter of fact. It is not often that intention is established by proof of a particular fact, and the trier of the fact must ordinarily reach a conclusion from proof of declarations, conduct, and a variety of circumstances. In this instance the evidence was conflicting. The court has resolved the conflict, and it is sufficient to say. the evidence favorable to defendant sustains the findings of fact.

The judgment of the district court is affirmed.