No. 32,945

Frank E. Harwi, *Appellee*, v. Jessie B. Harwi, *Appellant*.

(56 P. 2d 449)

Opinion filed April 11, 1936.

*C. L. Kagey, Hal M. Black, L. M. Kagey,* all of Wichita, and *Donald C. Little,* of Kansas City, for the appellant.

*J. H. Brady, N. E. Snyder,* both of Kansas City, and *J. Francis O'Sullivan,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

Dawson, J.: This appeal challenges the validity of certain ancillary orders issued in a divorce case.

The controlling facts, as gleaned from the pleadings, the evidence, and the statements of court and counsel, are as follows:

Plaintiff and defendant were married on May 1, 1934. It was plaintiff's third marital adventure. They took up their abode in Wichita. For various reasons plaintiff transferred the title to all his considerable property, real and personal, to defendant. On January 5, 1936, defendant ordered plaintiff out of their Wichita home, bought him railway and Pullman tickets to New York, gave him $25 in cash, and warned him that if he did not go to New York and stay out of Kansas for a year she would have him arrested and jailed for some delinquency, of which the record gives no hint.

Plaintiff went as far as Kansas City, Mo., at which point he broke his journey and took a room at the Hotel Kansas Citian in Kansas City, Mo., and entered his address on the hotel register as 401 N. Belmont, Wichita, Kan. On the following night, January 6, about 10 o'clock, he went to the Grund hotel in Kansas City, Kan., engaged a room and gave his address at 401 N. Belmont, Wichita, Kan. Next morning, January 7, he left the Grund hotel and returned to the Missouri hotel, again giving that hostelry his Wichita address. At his request the Missouri hotel sent an order to the Grund hotel for his baggage. Later on the same day, plaintiff reappeared at the Grund hotel and asked for a room. This·was denied him. He applied to another hotel for lodgings, but was refused. He then returned to the Missouri hotel and stayed there that night. During the time plaintiff was oscillating between the two cities he had been drinking a good deal, as his liquor bills at the Hotel Kansas Citian revealed and as he himself admitted, and he was considerably under the influence of intoxicants most of the time.

On January 8 this action was filed in the district court of Wyandotte county, Kansas, on plaintiff's behalf, against defendant, for a divorce. The grounds of the action are not of present concern, but in his petition he alleged—

"Plaintiff now is and has been for more than one year next preceding the filing of this action an actual, bona fide resident of the state of Kansas and now is an *actual* resident of Wyandotte county, Kansas."

In his petition he listed a considerable amount of described properties, which he valued at $35,000, all of which he alleged were his; but that they all stood in the name of defendant; and that defendant threatened to and would dispose of such property as her own unless

prevented from so doing by appropriate orders of court. He prayed that defendant be enjoined from disposing of any of the described properties and that a receiver be appointed to take charge of them under direction of the court.

On the same day, January 8, on a summary and *ex parte* hearing, the trial court issued a restraining order to defendant enjoining her from disposing of any property whatsoever.

On the same day, January 8, the trial court appointed a receiver—

"Of all and singular the property of Frank E. Harwi and Jessie B. Harwi of every description, kind and nature and of all moneys, claims in action, credits, real estate, sale contracts, real property and all other assets and property, be they real, personal or mixed, wheresoever situate, possessed by the parties or standing in the names of either or both of them to have and hold the same as an officer and under the order and directions of this court.

"Said receiver is hereby authorized and directed to take immediate possession of all and singular the property above described and to faithfully and fully administer it.

"Each of the parties hereto is hereby required and commanded forthwith upon demand of said receiver to turn over and deliver to said receiver the books, papers, accounts, moneys, deeds, property or vouchers for the property under their control and each of said parties is required to immediately execute and deliver to said receiver deeds for all real estate now owned or possessed by them and transfer and assign all of said properties to said receiver.

. . . . . . . . . . . . . .

"The parties hereto and all persons in control of any of said property by, through or under them, are hereby enjoined and restrained from interfering with or disposing of any property of the parties hereto in any way except to transfer, convey and turn over the same to said receiver."

Three days later, January 11, defendant by special appearance filed a motion to quash the service of summons on the ground that the action was improperly brought for the reason that plaintiff was not a good-faith resident of Wyandotte county.

On January 18, defendant by special appearance filed a motion to dissolve the restraining order which interfered with her possession and control of her property and to dissolve the order appointing a receiver. The grounds of this motion were the court's want of jurisdiction because plaintiff was not a resident of Wyandotte county, and because of the court's want of authority to place defendant's property in the hands of a receiver.

The propriety of the court's ruling on the motion to quash the service of summons cannot be reviewed at this time. That question must await the final judgment in the action. (*Oil Co. v. Beutner*, 101 Kan. 505, syl. ¶ 2, 167 Pac. 1061; *McCandliss Con-*

*struction Co. v. Neosho County Comm'rs,* 132 Kan. 651, 652, 296 Pac. 720.)

There is a suggestion in the plaintiff's brief that defendant entered a general appearance in the divorce action in this wise: A Wichita attorney, Robert Foulston, as a friend of defendant, mayhap as a friend of the court also, called the presiding judge by long-distance telephone and informally suggested an interpretative construction of the trial court's restraining order which would let defendant use some of her own money for necessities. The record reads:

"THE COURT: Well, let me say something about Mr. Foulston. Mr. Foulston called me over the telephone and said this woman had everything tied up. She didn't even have means to get something to eat. He suggested that she be permitted to withhold from the—to withhold two hundred dollars, at least, to take care of the situation. I consented over the 'phone that she should do that. But he said he didn't expect to represent her.

[COUNSEL FOR DEFENDANT]: "That is all right. And he is not representing her.

"THE COURT: He was just saying that to help her out at that time.

[COUNSEL FOR INTERVENORS]: "No question about that.

"THE COURT: I suppose that was complied with, wasn't it, Mr. Ditzen?

"MR. DITZEN [Receiver]: I don't know what was done. I told Mr. Foulston it was agreeable to me.

"THE COURT: Well, if she needs any more money, of course we will provide for that."

This incident is not fairly susceptible of a construction that a general appearance was entered in her behalf by an attorney authorized to represent her. (*Brinkman v. Shaffer, Adm'r,* 23 Kan. 528; 4 C. J. 1317, 1318.) Indeed, the record makes it clear that the trial court itself did not regard this incident as an entry of appearance, either general or special, on defendant's behalf.

Coming now to the errors based on the issuance of the restraining order and the order appointing a receiver, and the trial court's refusal to set those orders aside, these are, of course, appealable orders. A restraining order which has the effect of a temporary injunction is appealable. (R. S. 60-3302; *Laswell v. Seaton,* 107 Kan. 439, 441, 442, 191 Pac. 266.) So, too, the order appointing a receiver, or a refusal to change such an order, is also a proper basis' for an intermediate appeal although the party aggrieved thereby loses no right by waiting until the final judgment in the main case comes before the appellate court for review. Since the revision of the civil code (Laws 1909, ch. 182, as amended by Laws 1915, ch. 187; R. S. 60-3302) our early cases, like *K. R. M. Co. v. A. T. &*

*S. F. Rld. Co.*, 31 Kan. 90, 1 Pac. 274, no longer state our procedural law on this subject.

Did the district court of Wyandotte county have jurisdiction to issue the restraining order and the order appointing a receiver? The answer to these questions chiefly depends on the question whether plaintiff was a bona fide resident of Wyandotte county at the time the action for a divorce was begun. And although this court is precluded at this time from considering the question of plaintiff's claim of residence in Wyandotte county insofar as it bears on the validity of the service of summons, we are compelled to go into that identical question in order to perform our judicial duty in respect to the questions properly requiring our decision.

What is the factual basis for plaintiff's claim to have been a bona fide resident of Wyandotte county on January 8, 1936, when these ancillary orders of which defendant complains were issued? If the fact of plaintiff's residence turned upon disputed oral testimony this court would cheerfully follow the usual practice—accepting as true the trial court's findings on the controverted point. But here there is no controverted testimony. The controlling facts are not in dispute. Plaintiff was a resident of Wichita in Sedgwick county until the morning of January 5, 1936, when his wife turned him out of doors under threat of arrest and imprisonment. She provided him with railway and Pullman transportation and cash to go to New York, with an admonition to stay there, or at least to stay out of Kansas for a year. He conformed to that admonition until he reached Kansas City, Mo. There he broke his journey, lodged in a Missouri hotel, and for the next day or two traveled aimlessly back and forth across the Missouri-Kansas state line, with no apparent definite purpose other than to indulge in intoxicating liquors. Certainly his staying overnight on January 6 at the Grund hotel in Wyandotte county, Kansas, did not establish a domicile in that county. Neither did his futile attempt to secure lodging at that hotel the next night nor at another family hotel in Kansas City, Kan., which declined to receive him at a late hour that night, have the effect of initiating a genuine, bona fide residence in Wyandotte county. He passed the night of January 7 in the Missouri hotel. In the Missouri hotel on the dates of January 5 and 7, and in the Kansas hotel on January 6, he gave his residential address as 401 N. Belmont, Wichita. Later he stated that this was a mere inadvertence arising from habit, but that transparent bit of self-

serving testimony was entitled to no particular credence. Moreover, his manifest forgetfulness that Wichita was no longer his place of residence, if such was the fact, had the probative force of *some* affirmative evidence that he had not at the time consciously and intentionally adopted another location as a place of residence.

It is elementary law that to establish a residence two essentials are necessary—a deliberate intention to do so, and the carrying of that intention into effect by some appropriate and operative action. An intention alone to establish a residence is insufficient. Operative action without intention is likewise insufficient. All this has been expounded in the law books many times. (*Ingraham v. McGraw*, 3 Kan. 521; *Hart v. Horn*, 4 Kan. 232; *Adams v. Evans*, 19 Kan. 174; *Ford Adm'x v. Peck*, 116 Kan. 74, 225 Pac. 1054; *Roberts v. Robertson*, 123 Kan. 222, 254 Pac. 1026.)

Following the filing of this action plaintiff returned to the Missouri hotel for a day or two. His attorneys did make some arrangement with a woman who kept roomers in Kansas City, Kan., whereby it was agreed that he could have lodgings in her home; but when this record was made he had not yet taken up his abode thereat.

On such a record, can it be said that he was an actual bona fide resident of Wyandotte county at the time this action was begun, and when the ancillary orders were issued restraining the defendant from disposing of her property or any property standing in her name and appointing a receiver for such purpose? This court holds not. The requisite basis for the institution of the action—actual bona fide residence of the plantiff in Wyandotte county—did not exist. (R. S. 1933 Supp., 60-1502; *Carpenter v. Carpenter*, 30 Kan. 712, 2 Pac. 122; *Strackeljohn v. Campbell*, 136 Kan. 145, 12 P. 2d 829; 19 C. J. 423 *et seq.*) Consequently the action was not maintainable, and the ancillary orders complained of were issued without jurisdiction. It follows that the judgment of the district court must be reversed and the cause remanded with instructions to dissolve the restraining order which purports to interfere with defendant's disposition of her property or any property standing in her name or described in plaintiff's petition, and to set aside the order appointing a receiver to take charge of such property or any part thereof. It is so ordered.